UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00233-MOC

| | |
|---|---|
| JANET B. LIVINGSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. On January 22, 2004, she was found disabled as of December 10, 2003. Administrative Record (hereinafter "AR") at 25. On July 9, 2008, the Commissioner determined that she was no longer disabled as of July 1, 2008. Id. Plaintiff requested reconsideration, which was denied, and an ALJ held a hearing on March 11, 2011, at which plaintiff and a VE testified. AR at 25, 406-58. The ALJ issued a decision on March 10, 2010, finding that plaintiff's disability continued through November 10, 2009, but that her disability ceased on November 11, 2009, due to a medical improvement that related to her ability to work. AR at 25-37.

1

On September 27, 2012, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR at 13-15. 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record.

The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation in a Cessation of Benefits Case

Typically, a five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. See Kemp v. Bowen, 816 F.2d 1469, 1474–75 (10th Cir.1987); 20 C.F.R. § 404.1520(b)-(f). Where benefits have been granted, the Commissioner applies an eight step process as discussed below.

In this particular case, the Commissioner previously determined that the plaintiff was disabled. After receiving DIB, the ALJ conducted a medical improvement review to determine whether plaintiff continued to be disabled under 42 U.S.C. 423(f), which outlines the substantial evidence which, if shown, would justify cessation of benefits:

> A recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by—
>
> (1) substantial evidence which demonstrates that—
>
> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> (B) the individual is now able to engage in substantial gainful activity; or
>
> (2) substantial evidence which—
>
> (A) consists of new medical evidence and a new assessment of the individual's residual functional capacity, and demonstrates that—
> (i) although the individual has not improved medically, he or she is nonetheless a beneficiary of advances in medical or vocational therapy or technology (related to the individual's ability to work), and

(ii) the individual is now able to engage in substantial gainful activity, or

(B) demonstrates that—
(i) although the individual has not improved medically, he or she has undergone vocational therapy (related to the individual's ability to work), and
(ii) the individual is now able to engage in substantial gainful activity; or

(3) substantial evidence which demonstrates that, as determined on the basis of new or improved diagnostic techniques or evaluations, the individual's impairment or combination of impairments is not as disabling as it was considered to be at the time of the most recent prior decision that he or she was under a disability or continued to be under a disability, and that therefore the individual is able to engage in substantial gainful activity; or

(4) substantial evidence (which may be evidence on the record at the time any prior determination of the entitlement to benefits based on disability was made, or newly obtained evidence which relates to that determination) which demonstrates that a prior determination was in error.

42 U.S.C. § 423(f)(1)-(4). The statute then goes on to specify the scope of the evidence which the ALJ must consider, as well as the sources of such evidence:

Any determination under this section shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Commissioner of Social Security. Any determination made under this section shall be made on the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.

42 U.S.C. § 423(f). The regulations applicable to such consideration provide that the Commissioner must determine that there has been medical improvement in the claimant's condition which is related to the claimant's ability to work in order to find that disability has ceased. 20 C.F.R. §§ 404.1594(a), (c). Such regulation reflects the statutory requirement that, if a

claimant is entitled to disability benefits, his or her continued entitlement to such benefits must be reviewed periodically. 20 C.F.R. § 404.1594(a). Medical improvement is defined as

> [a]ny decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] was disabled or continued to be disabled.

20 C.F.R. § 404.1594(b)(1). Where medical improvement review is conducted, the most recent favorable medical decision is referred to as the "comparison point decision" or "comparison point date" (hereinafter "CPD"). In this case, the CPD was May 9, 2000. Tr., at 41, 176.

In conformity with the statute, the regulations go on to establish an eight-step sequential process for evaluating a beneficiary's continued entitlement to disability benefits. If sufficient evidence at any step of this process shows that a beneficiary still cannot engage in substantial gainful activity, the review process ceases and benefits are continued. 20 C.F.R. § 404.1594(f). The eight steps, in relevant part, are, as follows:

(1) Is the beneficiary engaging in substantial gainful activity? If he or she is, the Commissioner will find the disability has ended. 20 C.F.R. § 404.1594(f)(1).

(2) The Commissioner determines whether the beneficiary has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1 of the regulations. If the beneficiary does, his disability will be found to continue. 20 C.F.R. § 404.1594(f)(2).

(3) The Commissioner determines whether the beneficiary has experienced any medical improvement. If there has been medical improvement as shown by a decrease in medical severity, the Commissioner proceeds to Step Four. If there has been no decrease in medical severity, the Commissioner proceeds to step five. 20 C.F.R. § 404.1594(f)(3).

5

(4) The Commissioner determines whether medical improvement is related to the beneficiary's ability to do work; i.e., whether there has been an increase in the residual functional capacity. If medical improvement is not related to the ability to do work, the Commissioner proceeds to Step Five. If medical improvement is related to the beneficiary's ability to do work, the Commissioner proceeds to step six. 20 C.F.R. § 404.1594(f)(4).

(5) If the Commissioner found no medical improvement at step three or if the Commissioner found at step four that the medical improvement is not related to the ability to work, the Commissioner considers whether any of the exceptions to the medical improvement standard apply. If none of them apply, disability will be found to continue. 20 C.F.R. §§ 404.1594(d), (e) and (f)(5).

(6) If medical improvement is shown to be related to the beneficiary's ability to work, the Commissioner determines whether all of the beneficiary's current impairments in combination are severe. If the beneficiary has a severe impairment, the Commissioner proceeds to step seven. If the beneficiary does not have a severe impairment, he will be found no longer disabled. 20 C.F.R. § 404.1594(f)(6).

(7) The Commissioner assesses residual functional capacity and, based on all of the current impairments, considers whether the beneficiary can still do work that she did in the past. If the beneficiary can still do such work, disability will be found to have ended. Otherwise, the Commissioner proceeds to Step Eight. 20 C.F.R. § 404.1594(f)(7).

(8) The Commissioner considers whether the beneficiary can do other work, given his or her residual functional capacity, age, education, and past work experience. If the beneficiary can

do such other work, disability will be found to have ended. If the beneficiary cannot, disability will be continued. 20 C.F.R. § 404.1594(f)(8).

Under the regulations, "medical improvement" is defined as any decrease in the medical severity of the claimant's previously disabling impairments; a determination that there has been a decrease in medical severity must be based on improvements in the symptoms, signs and/or laboratory findings associated with such impairments. 20 C.F.R. § 404.1594(b)(1). If medical improvement is related to the ability to work, a beneficiary's residual functional capacity becomes a factor in determining whether he or she can engage in substantial gainful activity. 20 C.F.R. § 404.1594(c)(2). The determination of whether a beneficiary can engage in substantial gainful activity involves consideration of all current impairments, the beneficiary's residual functional capacity, and vocational factors such as age, education, and work experience. 20 C.F.R. § 404.1594(b)(5).

The ALJ decided plaintiff's continued entitlement to disability benefits at the Eighth Step of the sequential evaluation process. AR at 36-37.

### C. The Administrative Decision

In pertinent part, the ALJ determined that as of November 11, 2009, there had been a decrease in the medical severity of claimant's impairments. AR at 31. On that date, Dr. Straus noticed plaintiff was wearing athletic shoes and was observed ambulating without discomfort or a noticeable limp. Id. She reported dramatic improvement since her last visit with continued physical therapy. Id. Dr. Straus noted less tenderness with palpation to claimant's posterior right heel compared to her last visit. He also noted her only medication was VOLTAREN (an NSAID used for relief of joint pain). Id.

The ALJ then determined that such medical improvement related to plaintiff's ability to work inasmuch as it increased her capacity to perform basic work activities, but that she continued to have severe impairments. Id. The ALJ then determined that based on the impairments present at of November 11, 2009, claimant had the residual functional capacity (hereinafter "RFC") to perform light work, with a limitation of performing only simple routine repetitive tasks involved in unskilled work (commonly known as the "SRRT limitation"). After considering the testimony and evidence of record, the ALJ determined that plaintiff lacked the RFC to perform past relevant work as a school secretary, teacher's aide, or general office clerk; although such jobs were either sedentary or light, she could not perform those jobs due to her limitation to unskilled work. AR at 36.

After determining that plaintiff was a younger individual and that she had a high-school education and was able to communicate in English, the ALJ applied the Medical-Vocational Guidelines (hereinafter "Grids") and found that plaintiff was not disabled, regardless of whether she had transferable job skills, beginning November 11, 2009. Id. He determined that based on her age, education, work experience, and RFC based on impairments present as of November 11, 2009, she was able as of that date to perform a significant number of jobs in the national economy. Id.
Finding that she could do such other work as of that date, disability ended, due to medical improvement related to plaintiff's ability to work. 20 C.F.R. § 404.1594(f)(8).

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

> **I. Nonexertional Impairments.** When there are exertional and nonexertional limitations SSR 83-14 requires the consideration of vocational expert testimony. Here, the ALJ found Livingston, due to her severe depression, was limited to simple, routine, repetitive tasks yet the ALJ failed to obtain vocational testimony. Where the ALJ fails to follow the Commissioner's Rulings, must his decision be reversed?
>
> **II. Treating Physician Opinion.** SSR 96-2p requires the ALJ to make it sufficiently specific the weight given to a treating physician's opinions and the reasons for the weight given those opinions. Here Livingston's treating oncologist opined that she was completely disabled. The ALJ never mentions this opinion or state what weight it was given. Where the ALJ fails to follow the mandate of Social Security Rulings must his decision be reversed?
>
> **III. Failure to Consider Obesity.** Where the medical evidence documents obesity SSR 02-1p mandates 1) the ALJ determine if obesity is a severe impairment, 2) what effect it has on impairments at Step 3 and 3) what effect it has on residual functional capacity at Step 4. The ALJ here failed to even mention Livingston's obesity at Step 2 or Step 3 or when determining her RFC at Step 4. Where the ALJ fails to follow a mandated procedure must his decision be reversed?

Plaintiff's Memorandum in Support (#10) at 2. Plaintiff's assignments of error will be discussed *seriatim*.

### 2. First Assignment of Error

Plaintiff first takes exception with the ALJ's failure to employ a Vocational Expert (hereinafter "VE") at the eight step of cessation review, arguing that the presence of exertional and non-exertional restrictions mandated use of a VE. In Heckler v. Campbell, 461 U.S. 458, 470 (1983), the United States Supreme Court upheld the Commissioner's promulgation of the Grids for use at the fifth step of the sequential evaluation process (which is substantially similar to the process used at the eight step of cessation review) and determined that, in appropriate cases, the Commissioner need not introduce evidence of specific available jobs. The Court of

Appeals for the Fourth Circuit has subsequently held that the Grids may be used to direct a finding of either "disabled" or "not disabled" in cases involving exertional limitations. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). The Fourth Circuit has also held that the mere presence of nonexertional limitations does not, *per se*, preclude application of the Grids as nonexertional limitations rise to the level of nonexertional impairments and preclude the use of the guidelines only when the limitations are significant enough to prevent a wide range of gainful employment at the designated level. Id. The presence of pain or other nonexertional limitations does not necessarily preclude utilization of the Grids to direct a finding of not disabled. The purpose of bringing in a VE is to assist the ALJ in determining whether there is work available in the national economy which this particular plaintiff can perform. However, where the Grids can be properly employed, there simply is not need to hire a VE for that purpose.

Plaintiff argues that the ALJ finding that her RFC for light work was limited to SRRTs prevented the ALJ from relying on the Grids in determining whether work existed in significant numbers in the national economy that she could perform. Plaintiff's Mem. At 11-15. Therefore, "reliance on the Grids is precluded only if the nonexertional condition in question is credibly found to affect the individual's RFC to perform work of which he is otherwise exertionally capable." Hedrick v. Colvin, 2013 WL 2434612, at *5 (W.D.N.C. June 4, 2013). A limitation to SRRTs does not prevent an ALJ from relying on the Grids. Scott v. Colvin, 2013 WL 3927607, at *6-7 (W.D.N.C. July 29, 2013). Plaintiff's reliance on Houston v. Astrue, 2011 WL 4747894, at *3 (W.D.N.C. Oct. 7, 2011), (Mag. J. Mem. & Rec.), adopted, 2011 WL 4747879, is misplaced as the problem in that case was with the ALJ's failure to ask a hypothetical that included all of plaintiff's impairments. The court overrules this assignment of error.

### 3. Second Assignment of Error

In her second assignment of error, plaintiff ascribes error to the ALJ failure to discuss a letter from Dr. Boyd, plaintiff's treating oncologist, in which he concluded that plaintiff was disabled and could not work. Plaintiff's Mem. (#10) at 15-17. Such letter does not, however, amount to a medical opinion. In pertinent p[art, Dr. Boyd opined that "[b]ecause of her current severe depression and fibromyalgia symptoms, she is completely disabled." AR at 340. Clearly, because such opinion touches on a vocational issue reserved for the Commissioner, it is not a medical opinion. 20 C.F.R. § 404.1527(d)(3); SSR96–5p, 1996 WL 374183 (July 2, 1996) ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."); Briggs v. Colvin, 2013 WL 4748234, at *5 (W.D.N.C. Sep. 04, 2013) (holding that a treating source's statement that a claimant was disabled did not constitute a medical opinion). The court, therefore, overrules this assignment of error.

### 4. Third Assignment of Error

Finally, plaintiff contends that the ALJ failed to properly consider plaintiff's obesity. SSR 02–1p requires the Commissioner to make an individualized assessment as to how a plaintiff's obesity, considered together with her other impairments, impacts her functional capacity for work. Plaintiff's argument is, however, devoid of citation to specific portions of the administrative record where her treating sources mention her obesity or ascribe limitations as a result of such condition. Indeed, the record is antithetical to a claim that the ALJ should have made an assessment as to plaintiff's alleged obesity as no treating source, who treated Plaintiff while her BMI was 30 or over, discussed any limitations related to plaintiff's obesity, or even

suggested that she needed to lose weight to address any of her symptoms . AR at 301, 306, 308, 310, 312, 314, 316-17, 321, 343-68, 384-91. Indeed, the ALJ relied on the opinions of the state agency physicians, who had in turn considered plaintiff's weight, but who opined that she was not disabled. AR at 35 (referencing state agency reports, found at AR at 201-208, 252-59). Thus, any SSR 02-1p error is harmless. Thompson v. Colvin, 2013 WL 4854418, at *8 (W.D.N.C. Sept. 11, 2013). The court, therefore, overrules this assignment of error.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) the plaintiff's Motion for Summary Judgment (#9) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (#16) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: 2/6/2014

Max O. Cogburn Jr.
United States District Judge